# Pennsylvania Railroad Co. *v.* Kane & Elk Railroad Co., Appellant.

*Railroads—Contract as to cars—Interchange of traffic—Custom —Evidence.*

Where a railroad company agrees in writing with another railroad company "to furnish all cars required for the interchange of traffic under the usual rules for such interchange," and the first company subsequently sues the second company to recover for the loss of three cars which had been destroyed by fire on a private siding, where they had been placed by the second company, the plaintiff in such action may show that the "usual rules for such interchange" recognized by railroad companies were the rules of an association of which the defendant company was not a member, and that one of such rules was as follows: "For the mutual advantage of railway companies interested the settlement for a car owned

or controlled by railway company when damaged or destroyed upon a private track, shall be assumed by the railway company delivering the car upon such track."

Argued Oct. 23, 1916.   Appeal, No. 382, Oct. T., 1916, by defendant, from judgment of C. P. McKean Co., June T., 1912, No. 88, on verdict for plaintiff in case of Pennsylvania Railroad Company v. Kane & Elk Railroad Company.   Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ.   Affirmed.

Assumpsit to recover the value of three freight cars; Before BOUTON, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $884.50.   Defendant appealed.

*Error assigned,* among others, was in admitting in evidence the rules of the Master Car Builders Association.

*A. L. Cole,* with him *H. B. Hartswick,* for appellant, cited: Ambler v. Philips, 132 Pa. 167; Peoria and P. U. Ry. Co. v. U. S. Rolling Stock Company, 136 Illinois 643.

*F. D. Gallup,* for appellee, cited: Carter v. Philadelphia Coal Co., 77 Pa. 286; Adams v. Pittsburgh Ins. Co., 95 Pa. 348; Lupton v. Nichols, 63 N. E. 477.

OPINION BY TREXLER, J., March 7, 1917:

On March 11, 1904, the Pennsylvania Railroad Company and the Kane & Elk Railroad Company entered into a contract which contained the following provision for the interchange of cars: "The Pennsylvania Railroad Company will endeavor to furnish all cars required for the interchange of traffic under the usual rules for such interchange."   The Pennsylvania Railroad Company transferred to the Kane & Elk Railroad three

loaded freight cars consigned to the American Plate Glass Company. These were duly delivered to the siding of the Glass company by the Kane & Elk Railroad Company and shortly thereafter were partly destroyed by fire. The Pennsylvania Railroad Company sues the Kane & Elk Railroad Company for the loss. The question in the case is what is comprehended in the words above quoted from the contract "under the usual rules for such interchange." There being nothing in the contract to show what the usual rules were, testimony was admissible to show what rules generally prevailed. This testimony was not produced to vary the contract but merely in explanation of it. The plaintiff called a number of witnesses who had been employed in positions on railroads which involved the interchange of traffic and necessarily brought with it knowledge as to the condition of affairs and the mode in which business was transacted, who testified that the usual rules prevailing among railroads were what was known as the M. C. B. rules, or in other words, Master Car Builders' Association rules. There was also some evidence that the parties to the contract had recognized these rules by their use in a number of matters arising between them. Under these rules it is provided as follows: "For the mutual advantage of railway companies interested the settlement for a car owned or controlled by railway company when damaged or destroyed upon a private track shall be assumed by the railway company delivering the car upon such track."

The burden of defendant's argument is that the court erred in allowing the plaintiff to offer as a basis of a claim proof of a general code of rules of an independent association of railroad companies, of which the defendant company is not a member. We answer this by saying that the rules standing alone are only binding upon those companies who have subscribed to them. They were not offered in this case to show that they were binding upon the defendant company by any provision contained in them. As said before they were merely in ex-

planation of the term used in the contract between the parties, that is, "the usual rules for interchange of traffic." When plaintiff proved that these rules were the usual rules generally employed by railroad companies it proved a fact. How they became the usual rules was not the pertinent question. The inquiry was directed as to what the usual course of conduct was between railroads in this respect and how they operated in regard to the interchange of cars. Under the rules shown to have been generally employed by railroad companies the defendant company was liable for the cars delivered by it onto the private siding of the glass company and there was sufficient evidence in the case to warrant the jury in so finding.

The defendant offered in evidence the rules of the American Railway Association for the purpose of showing that they were the rules which were in force at the time the claim of the Pennsylvania company arose. We think the court was clearly right in holding that the rules were not in conflict and that both could stand, but that the real question for the jury was whether the rules of the M. C. B. Association were "the usual rules."

We think the court was right in leaving the matter to the jury and there is nothing appearing on the record that requires any interference on our part with the result.

All the assignments of error are overruled and the judgment is affirmed.